May it please the Court. Keith Wolfenden on behalf of the appellant, Shirley Colletti. I intend to watch the clock, but I hope to reserve approximately two minutes for rebuttal. The heart of the dispute before the Court in this case is an issue of first impression for the Ninth Circuit. Namely, whether or not a substitution and forfeiture order that deprives a criminal defendant of his or her livelihood is an independent violation of the Constitution under the Excessive Violence Clause. The Supreme Court in the United States v. Bajor Khajian decided the historical principle that should guide this Court's analysis. Specifically, the Supreme Court in that case explained that the medieval predecessors of fines from which the Excessive Fines Clause originated should be, quote, proportioned to the offense and that they should not deprive a wrongdoer of his livelihood. So here we have the case where there's not really a livelihood, really. We're talking about a pension and Social Security benefits. How does that philosophy or statement fit in with the facts of this case? Well, Your Honor, as explained in the briefing, livelihood is not solely limited to a monthly income or wages from a job. Livelihood is simply that amount that would be necessary to meet. You're equating livelihood, it seems to me, with assets. And I don't see how that equates with the medieval concept of in the Magna Carta of depriving one of his life. Let me try to explain that, Your Honor. Contentment, which is sort of the basis of the fine that originated, which is ultimately in the Bill of Rights and ultimately in the Excessive Fines Clause. As multiple historical sources have indicated, is that which is necessary for support according to an individual's condition or state of life. I'm citing here to the Excessive Fines Clause Impunitive Damages Treatise by Massey, as cited in the briefing. A man's countenance or credit, which he has together with and by reason of his freehold, that which is necessary for support and maintenance of men, agreeing to their civil qualities or state of life. Nothing in these historical definitions or sources indicates that it would be limited to a certain income from a job or other monthly. Well, perhaps. The question I have in this case is that the district court said, well, she still has her pension, she still has Social Security. That's enough. And your contention is, no, she needs the $227,000 or whatever the amount is to maintain her lifestyle. There doesn't seem to be a factual basis for your assertion that's in the record. Well, first, I don't believe that that is exactly what the district court held. The district court simply said that it doesn't touch on her livelihood. It didn't say that that was enough. It never made that finding. That may be true, but at least in passing, the district court said, well, the government is not going after her pension, not going after Social Security. Yes. I guess the question is, assuming that that was a factor in the district court's decision, what do we make of that on appeal? If the district court concluded that Ms. Colletti had sufficient assets from solely her Social Security and her pension, then this Court should give deference to that factual finding. But that factual finding was never made. I don't see any authority that says that we have to have factual findings as to what her lifestyle is. I don't see that anywhere, what she needs. If she has the assets and certain ones, certain, and they don't go after what she has been awarded through Social Security and pension for her retirement, I just don't understand, I don't see any authority that says that we have to have this review of how she lives and what she needs. Well, that goes back to what we were discussing earlier with regard to what exactly is a containment or a livelihood. Well, I'm asking, what is the authority here that you're relying on? Well, Your Honor, this is an issue of First Impressions of the Ninth Circuit. Well, it is, but in the First Circuit case, the amount that was at issue was so enormous that the defendant was never going to be able to get credit, never going to repay the debt, never going to be able to get an education. And so there was an obvious effect on the future opportunity to make anything. And so it seems to me that the focus, at least in that case, was on the future opportunity to make money. And here, once this amount is taken, there's nothing to prevent your client from going back to work, to supplement the pension and so forth, if it's not sufficient. So it's not an interference in the same way. And I wonder if you could address that. Well, yes, Your Honor. If Mrs. Colletti was in her 40s or 30s or 50s, then I agree with you that this court should not simply – should look to her ability to maintain her livelihood throughout some other employment. However, in this case, she's now 75 years old. She has multiple health problems. She's on 24-hour oxygen. She's receiving breathalyzer treatments every four hours. There's really no ability for her to maintain her livelihood through any other means other than through this $220,000 divorce decree. Plus her pension, plus her Social Security. Yes, Your Honor. She's owed this money all along, hasn't she? Yes, Your Honor. For many, many years? Yes, Your Honor. Tell me, is there anything in the record about how much the pension is or Social Security benefits? Yes. That's on pages 241 and 242 of the record. I don't believe I have the exact amounts. I believe they both total about approximately $800 a month. How much? Approximately $800 a month. But I can check when I – That's why. Yeah. And Mrs. Colletti explained that her monthly expenditures far outweigh – far exceed that amount. Her health costs alone exceed $400 to $500 on average per month. And Mrs. Colletti submits that the district court should have considered what the amount that her general expenses to meet her basic level of subsistence, which is what a contentment would traditionally have been under historical principles, should have looked at what her ability to meet those obligations would have been after the government's forfeiture, and should have reduced or eliminated the government's forfeiture depending on that analysis. That analysis was never done. I gather what your argument is is you're not arguing here for a ward of the whole 227,000. It's just that the district court should make findings and tailor the relief according to what her subsistence needs were? Yes. Well, I'm not exactly sure how that math will come out, but it could possibly be that the whole 220,000 would not necessarily need to be returned to Mrs. Colletti. That's correct. Okay. We've got about three minutes left. Do you want to raise anything else this morning? I'll go ahead and save that time for rebuttal. Thank you, Your Honor. Very good. Thank you. Good morning, and may it please the Court. Robert Ellman for the United States. Your Honors, with respect to the Eighth Amendment argument, I'd like to point out first that there is a fact-finding, and I point you to page 62 of the excerpts of record where Judge McKibben found that the $220,000 the government was forfeiting here was not, in its opinion, touching on her livelihood. And that's because the amount of money is the proceeds from a marital division of property. Ms. Colletti and her ex-husband had a house. In the divorce proceeding in 2007, the house was liquidated, and after a great deal of litigation between the two of them, $227,000 became Ms. Colletti's sole and separate property. It was not income to Ms. Colletti at any time. I suppose that's true, but I don't think your theory fits neatly in the case of somebody who's not working. Well, you know, it doesn't, Your Honor, but that raises I think a broader and more problematic point if you walk down this road that the Levesque Court has walked down. What's enough? What's the rule going to be? What's the inquiry going to be? How does a court determine what livelihood is, particularly for someone who's retired versus someone who's working? They take into account how old Ms. Colletti is, what her physical condition is, et cetera. According to the education and all of the cases that construe whether punishment is excessive, the amount of the forfeiture is measured against the gravity of the offense, not the personal circumstances of the defendant. And if you cross that line, you invite this interminable and unworkable inquiry in every case. Why do you think it's unworkable? And we do it all the time in bankruptcy. We do it all the time in other contexts, the Social Security Administration. I mean, these are really not too mysterious. If you take the theory, and the First Circuit seems to have taken the theory, that you can't use a fine to leave someone utterly destitute. Ms. Colletti, of course, is not utterly destitute, as you've pointed out, based on the amount of money the government did not attempt to attach here. But it's an inquiry the court doesn't have to make in the first place, unless it adopts this entirely different framework for assessing Eighth Amendment claims. There's no test. There's no rule. You will have to fashion one to determine how much of this amount is not violative of the Eighth Amendment. For Ms. Colletti, I don't know how you do that. I don't know what the formula is. And none has been suggested, either by opposing counsel or the Levesque Court. No, but I guess in the real world, I have to say, we do it in other contexts all the time. So it's not, to me, it doesn't seem that complicated. Well, the court also found, as I said, that it did not touch on our livelihood because the Levesque analysis is an attempt to preserve the future ability to earn a living. And there's nothing to suggest, as I said, that this proceeds from this meritably divided property ever represent an income. Is there any evidence beyond the pension and Social Security that there are other assets not attached? I don't know, Your Honor. I don't think that there is any evidence of that. The government had a difficult time even finding anything to attach. The court, I'm sure, is familiar with the background of the case and where the money went from the racketeering. It's no longer within the jurisdiction of the courts. Right. But this is sort of an unusual situation where really none of the money that we're talking about here had any connection to the crime. Not that that is the definitive factor, but it's true. It is true, Your Honor, but that's why the statutes give the government the ability to substitute property. Ms. Colletti's racketeering netted her a great deal of money. She sent most of that overseas to Mr. Conforte. We can't get that back. What you have here is a perpetrator who stole money and never paid it back, and you have a victim. In this case, the victim is the United States. In other contexts, it won't be. It will be individuals who have been defrauded. So the court has a choice to make. Either it can indulge the theory that the perpetrator should keep the ill-gotten gains or they should revert to the victim. Except these are not ill-gotten gains. It's just a marital division of property. Well, they're a substitute for the ill-gotten gains because the ill-gotten gains were never paid back to the victim. And money is fungible in this case. Of course. The way opposing counsel put it was he said, quote, I'm not exactly sure how the math works out, end quote. And that's really my point, Your Honor. No one's sure how the math works out. So if you walk down this Leveque path, you're going to have to come up with a formula. Are you conceding that the Leveque itself, if we followed Leveque, that it would require this reversal? If you follow Leveque, you would need a hearing to determine whether her livelihood is affected by this. Really? And if so, how much? I don't understand that at all. Well, if you accept the district court's finding that it doesn't affect her livelihood, then you don't need any hearing at all. Well, in Leveque, it seems to me as I read it, even if it says, even if the defendant does not have sufficient funds to cover the forfeiture at the time of conviction, the government may seize future assets to satisfy the order. It's citing one of its prior cases. We have upheld the enforcement of money judgments as acceptable under the excessive fines clause. We acknowledge, as the district court pointed out, that even if there is no sign that the defendant could satisfy the forfeiture in the future, there is always a possibility she might be fortunate enough to legitimately come into money, and that the Attorney General can remit at forfeiture on grounds of hardship. So you think that that requires a hearing in this case? I'd have to say no, then, Your Honor. I agree. It would not. So far, in every circuit except the First Circuit, either a forfeiture judgment is excessive at the time it's entered or it isn't. It doesn't change with the defendant's personal circumstances. Assuming that this Court stays that course as the government urges it to do here, then this argument is waived because it is a question that would have to have been presented to the district court in the first instance and was not, and would have to have been challenged on direct appeal but was not. I'm sorry. Which argument is waived? The Eighth Amendment Levesque argument, Your Honor. Okay. And actually, the Latches argument is waived, too, but since opposing counsel hasn't addressed it, I won't address it either, unless you have questions about it. No. Any further questions? Thank you, counsel. Thank you. Your Honor, just to respond to your earlier question, Ms. Cuddy is currently receiving $593 from her Social Security and $299 from her pension. Again, that's on page 242 of the record. Counsel asked this Court, his main argument was it's hard to apply this constitutional rule, therefore, this Court should not adopt it. Well, his main argument, as I understood it, was different than that, which is that the proportionality question must be judged at the time of the sentencing and that proportionality relates to the offense and not to the individual circumstances. What's wrong with that argument? That goes to the gross disproportionality inquiry, which is the first of the two historical limits on the government's power to act and to impose a fine, whether or not it was proportionate to the offense. And then the second portion, as recognized by the Bajikasian Court, is whether or not it would deprive a defendant of his or her livelihood. So whether or not it's proportionate and related to the offense. But why aren't they both dealt with at the time of the offense or the time of the sentencing? Well, the reason for that, Your Honor, is the reason exactly explained by the Levesque Court, which is that a defendant could possibly come into money at a future time. So if this constitutional inquiry was conducted and eliminated at the time of sentencing and a constitutional violation was found, then the government would be precluded from going after future funds, which is exactly why Ms. Colletti urged this Court to apply this constitutional rule at the time the government acts to substitute unrelated assets, which is also government conduct, which should also be subject to this constitutional inquiry. So essentially, imposing a rule that would only allow this constitutional violation to be analyzed at the time of sentencing would be neither fair for the defendant or for the government because of what could possibly occur in the future. I also wanted to address counsel's – address the waiver argument. The Eighth Amendment did not exist – the Eighth Amendment argument here did not exist at the time of Ms. Colletti's 2001 conviction, and she was not required to foresee in the future and raise it before this Court. The logic behind the waiver or forfeiture rule is generally that we want to, you know, promote judicial efficiency by encouraging defendants to raise arguments as early as they possibly can be made. Well, it may not have been ripe either. Exactly, Your Honor. So with regard to that point, the Eighth Amendment argument was not waived. Well, what do you – going back to what I was asking about before, here's what Judge McKibben said. In any event, even if the Court felt there was some minor area that the Court could consider opening the door on this, it's absolutely clear with the burden being on the defendant in this case that the government has not proceeded to go against her pension or Social Security. That proves my point, Your Honor, is that the only thing that the Court was looking to was her pension and Social Security. It made the legal error that those were the only two property assets that it should look to. It did not make it the factual finding, which is what I'm arguing to the Court is what it should have made. Right. Is that based on all of her assets, all of her ability to maintain her livelihood? No, I think the implication to be drawn, and I agree with you it's not entirely clear. It's not – probably doesn't rise to the level of factual finding. The implication is Judge McKibben thinks that the pension and Social Security is enough to withstand an Eighth Amendment challenge standing on its own. I see my time is up. You can go ahead if I ask the question. Yeah. I don't believe – I've read through the record multiple times. I personally, when reviewing those facts, the Court's findings did not see that finding. That's not what you wanted. Exactly. That's not what you now want. Okay. Well, thank you very much, Your Honor. Yeah. Thank you both for your arguments. Good to see both of you. Counsel, before you leave, I want to thank you for taking this case pro bono. I should have acknowledged that at the onset.
judges: Schroeder, Thomas, Graber